# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

THEODORE W. SMITH, III,

    Plaintiff,

v.

SOUTHERN OHIO CORRECTIONAL FACILITY
OFFICER BIGHAM,

    Defendant.

Case No. 1:17-cv-128

Barrett, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

On February 24, 2017, Plaintiff, an individual previously incarcerated at the Southern Ohio Correctional Facility ("SOCF") who proceeds *pro se*, tendered a complaint against SOCF Correctional Officer Bigham.[1] Plaintiff's complaint alleges that on November 14, 2016, Defendant Bigham used excessive force against him by discharging "mace" without provocation, in violation of Plaintiff's constitutional rights.

The Court granted Plaintiff leave to proceed *in forma pauperis*, directed the parties to complete discovery by November 30, 2017, and to file dispositive motions by February 14, 2018. (*See* Docs. 2, 4, 10, 20, Notation Order of 1/30/18). On February 13, 2018, the Defendant Bigham timely filed a motion for summary judgment. For the reasons that follow, the undersigned recommends that Defendant's motion be granted only in part, and that additional pretrial and trial dates be scheduled if this R&R is adopted.

### I. Summary Judgment Standard and the Record Herein

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper

---

[1] On November 8, 2017, Plaintiff notified the Court of his transfer to the Ohio State Penitentiary. (Doc 16).

"if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Rule 56(c) explains in relevant part that a party asserting that a fact cannot be genuinely disputed must support the assertion by citing to "particular parts of materials in the record, including depositions, documents…affidavits or declarations, stipulations…, admissions, interrogatory answers, or other materials" or alternatively by showing that the adverse party "cannot produce admissible evidence to support the fact." This Court must consider the cited materials, but "may" consider other materials in the record. Rule 56(c)(3).

Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-49. The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id.* at 252.

November 14, 2016 was a busy night at SOCF. Defendant Bingham admits that

2

he was involved in two separate "use of force" incidents that evening. In support of his motion for summary judgment, Defendant offers two Declarations submitted under penalty of perjury by SOCF Institutional Inspector Mahlman, and by SOCF Paralegal Sherri Bishop, which Declarations concern the two "use of force" incidents to which Bigham admits. Ms. Mahlman's Declaration also states that she investigated an internal grievance regarding a third (undocumented) incident about which Plaintiff complains. During the two documented "use of force" incidents, which occurred on or around 6:45 p.m. and on or about 9:05 p.m., respectively, two different correctional officers (not Defendant) employed pepper spray against two different inmates (not Plaintiff).

Other than the limited testimony contained in the two Declarations,[2] Defendant primarily relies upon other institutional records: (1) Plaintiff's "offender movement history" reflecting his housing at SOCF; (2) Plaintiff's November 21, 2016 Informal Complaint Resolution ("ICR") form, alleging he was "maced (without reason/provocation) by a [unspecified] corrections officer" who failed to report that use of force, and an institutional response stating that Inspector Mahlman "is aware of the circumstances…and the matter is being addressed…"; (3) Plaintiff's Notification of Grievance appealing the response to his ICR and the 12/20/16 response by Inspector Mahlman; (4) Plaintiff's final appeal to the Chief Inspector and the institutional response dated 2/15/17; (5), a Conduct Report regarding the 6:45 p.m. reported use of force by Defendant Bigham; and (6) a second Conduct Report regarding the 9:05 p.m. reported used of force by C/O Bigham. *(See generally* Exhibits to motion, Docs. 22-1, 22-2, 22-

---

[2]Notably, the record does not contain any form of testimony by either the Plaintiff or the Defendant in this case.

3).

## II. Background

### A. Allegations of the Complaint

The Court begins with the facts alleged by Plaintiff before turning to the evidence presented by Defendant in support of summary judgment. Plaintiff's complaint alleges, in relevant part, that Plaintiff was housed in the "sensory deprivation area" of the "J-2" housing unit at SOCF on November 14, 2016. (Doc. 3 at 5). On that date, Plaintiff alleges that an unidentified "Corrections Officer" "discharged his mace in the J-2 Seg. Area." *Id.* at 6. The complaint further alleges:

> I and inmates Lattimer…and Elswich… complained of burning eyes and difficulty breathing. I asked the officer to open the window or turn on the fan. He refused. I retreated to the back of my cell to take advantage of the air circulation coming from below under the desk in the cell. After Officer Bigham entered the area behind the cells he sprayed mace to the vent directly into my eye. No explanation was given for the officer's use of force and as of this date no conduct report has been issued by the Officer [illegible] for misconduct.
>
> Wherefore Mr. Smith prays this court enter judgment granting (1) declaration that the acts and omissions described herein violated plaintiff's rights under the constitution and laws of the United States; (2) compensatory damages in the amount of $125,000.000; (3) Punitive damages in the amount of $250,000.00; (4) a jury trial on all the issues triable by jury; (5) Plaintiff's costs… and (6) any additional relief this court deems just, proper and equitable.

(Doc. 3 at 6). The undersigned construed Plaintiff's claim under 42 U.S.C. § 1983, as a claim seeking monetary damages for the alleged excessive use of force by Officer Bigham, in violation of Plaintiff's Eighth Amendment rights. (Doc. 4).

### B. Undisputed Facts

Based on the evidence presented, the undersigned finds that the following facts

4

are undisputed:

1. On November 14, 2016, Plaintiff was housed in cell number J2-28.

2. On that date, at 6:45 p.m., Defendant Bigham was involved in a use of force incident with another inmate (not Plaintiff), during which incident another officer (C/O Joseph) used "OC spray," a type of pepper spray referred to as Plaintiff as "mace," to subdue the inmate in J2-57.

3. The 6:45 p.m. use of force did not occur on Plaintiff's cell range and did not directly involve Plaintiff.

4. At approximately 9:05 p.m. on the same evening, Defendant Bigham was involved in a second use of force incident with a different inmate (not Plaintiff) housed in the J2-37 cell, within the cell range (21-40) in which Plaintiff was housed.

5. A Conduct Report regarding the 9:05 p.m. incident reflects that it was another officer, Lt. Eshem, who deployed pepper spray during that incident to subdue the inmate in J2-37.

6. No medical treatment was provided to Plaintiff on November 14, 2016, and there is no medical evidence to corroborate Plaintiff's allegation that Defendant Bigham used OC spray against Plaintiff on November 14, 2016.

**III.    Defendant's Motion for Summary Judgment**

**A.  Whether Any Dispute of Material Fact Exists**

Defendant first argues that based upon Ms. Mahlman's investigation and the two documented "use of force" incidents on the evening of November 14, 2016, he did not

5

use OC spray against the Plaintiff at all. He notes that the 6:45 p.m. incident involved an inmate housed "in a separate [cell] range," although the record does not reveal the precise distance between individual cells or cell ranges. (*See* Doc. 22-2, Mahlman Declaration and Doc. 22-3 at 8-11). Defendant further notes that the second 9:05 p.m. incident, though apparently on the same cell range, involved an inmate other than Plaintiff. Thus, Defendant argues that "Plaintiff cannot establish that Defendant Bigham used force against him in either instance [at 6:45 or 9:05 p.m.]."

The records attached to Defendant's motion confirm the existence of the two documented uses of OC spray by other correctional officers (not Defendant Bigham), at 6:45 p.m. and again at 9:05 p.m. The records further confirm that the referenced uses of force were directed at other inmates and not Plaintiff. However, Plaintiff has never argued that the 6:45 and 9:05 p.m. *documented* uses of OC spray were directed at him. Rather, Plaintiff alleges that on one of those two occasions,[3] the use of OC spray <u>indirectly</u> impacted Plaintiff because the proximity and intensity of the pepper spray caused Plaintiff's eyes to burn, and for him to retreat to the back of his cell. Plaintiff alleges that he requested that a window be opened or a fan be used to help disperse the remaining fumes, but that an officer declined that request. Instead, Plaintiff alleges

---

[3]Although there is no information in the record concerning the distances between cells (or cell blocks), it is undisputed that only the 9:05 p.m. incident occurred in the cell range in which Plaintiff was housed. Plaintiff's grievance identifies the time of the incident in which he was involved as occurring between 7 and 9:45 p.m. For the first time in his argument in opposition to summary judgment, Plaintiff asserts that he suffered effects of OC spray used in the earlier incident, rather than the 9:05 incident. However, documentary evidence confirms that the 6:45 incident occurred in a different cell range than the 21-40 block in which Plaintiff was then housed. Nevertheless, Plaintiff's opposition to Defendant's motion details a theory, based on video evidence regarding that 6:45 incident, that Defendant Bigham deployed his OC spray when he accessed a pipe chase area near the back of Plaintiff's cell between 6:40 and 6:43 p.m. No DVR footage, either of the 6:45 p.m. incident or of the 9:05 p.m. incident (to the extent video of the later incident exists), has been filed of record.

6

that Bigham proceeded to walk *behind* the cell block range area and sprayed OC spray through a vent directly into Plaintiff's cell, but without documenting that additional (third) use of OC spray, and without charging Plaintiff with any rules violation or other justification for deploying the OC spray.

On November 14, 2016, Plaintiff was physically housed in cell 28. (See Doc. 22-3 at 2). In Plaintiff's second step appeal of his informal grievance to the SOCF Institutional Inspector, he states that he is alleging an "<u>unreported</u> use of force 2nd shift J2" between 7 and 9:45 p.m. on November 14, 2016. (Doc. 22-3 at 4)(emphasis added). He states in the Notification of Grievance ("NOG") that he was housed in the "21-40 range," and that the incident occurred after a corrections officer deployed OC spray nearby and "refused" to open a window or turn on the fan. Plaintiff states in his NOG that he

> retreated to the back of the cell to take advantage of any circulation coming from the holds under the desks in the cell. I am unclear as to whether the officer, after entering the area behind the cells, sprayed all the cells or if he sprayed targeted areas. However, when the officer got to my cell (#28) he sprayed mace directly into the vent area and/or directly into my face. No explanation was cited by the officer for his use of force and as of this date no conduct report has been issued by the officer alleging misconduct warranting his U.O.F. I was denied medical attention at the time at the incident occurred, but was seen by a nurse 12/5/16 but no treatment provided.

(Doc. 22-3 at 4).

Ms. Mahlman's response to the NOG acknowledges that Plaintiff is alleging an "unreported Use of Force in J2." (*Id.* at 5). The response denies Plaintiff's appeal based upon "[n]o violation of rule, policy, or law." (*Id.*) Ms. Mahlman points out that Plaintiff's initial informal grievance failed to comply with AR 5120-9-31, because the ICR withheld

7

specific details "such as who, where, and when" concerning the allegedly unreported use of force. However, she then addresses Plaintiff's appeal on the merits by noting that Plaintiff was interviewed "in my office and I escorted you to medical." (*Id.*) She refers to Plaintiff's statement to the nurse that "I don't have any injuries right now," and the fact that Nurse Reiter found no injury. Finally, Ms. Mahlman notes, consistent with her Declaration in support of summary judgment, that earlier the 6:45 p.m. "use of force" incident did not occur on Plaintiff's range and "did not directly involve you." (*Id.*)[4]

As the moving party, Defendant bears the burden of production to either support its assertion of undisputed facts by citing to "particular parts of materials in the record, including depositions, documents…affidavits or declarations, stipulations…, admissions, interrogatory answers, or other materials" or alternatively by showing that Plaintiff "cannot produce admissible evidence to support the fact." Rule 56(c)(3), Fed. R. Civ. P. Defendant claims he is entitled to summary judgment based upon Plaintiff's inability to satisfy "either the objective or the subjective prong of the Eighth Amendment analysis because no force was used against him." (Doc. 22 at 6).

Defendant's reference to records that show that Plaintiff was not directly involved or targeted in two *documented* use of force incidents is simply not probative evidence concerning whether the Defendant employed OC spray during a third undocumented incident, in which Plaintiff alleges that Defendant deployed spray through a vent at the

---

[4]Ms. Mahlman's Declaration and NOG response both refer only to the earlier, 6:45 p.m. use of OC spray by Defendant, pointing out that that incident occurred in a different cell range of the J2 area than where Plaintiff was then housed. Ms. Mahlman's Declaration and NOG response fail to reference the second use of OC spray on the same evening at 9:05 p.m., which appears to have occurred in the same cell range as Plaintiff was then housed, though directed toward the inmate housed in cell 37.

8

back of Plaintiff's cell. Considering the lack of any testimony or declaration that contradicts or denies Plaintiff's allegations, the undersigned concludes that the Defendant has not met his burden of production to show that Defendant Bigham did not direct OC spray through the back of cell 28, during a third incident that was not included in either of the two documented "use of force" reports.

### B. Whether Defendant is Entitled to Judgment Based Upon the Evidence Presented on Subjective and Objective Components

An Eighth Amendment claim requires a prisoner to satisfy both an objective component, which requires the pain that is inflicted to be "sufficiently serious," and a subjective component, which focuses on the state of mind of the prison official. *See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)(citations omitted). Defendant's second argument is that Plaintiff cannot satisfy either prong of his Eighth Amendment claim.

#### 1. Subjective Component

With respect to the subjective component of Plaintiff's claim, Defendant's argument is based wholly upon Defendant's contention that no use of force occurred. However, Plaintiff argues in opposition to Defendant's motion that a reasonable juror could find that Defendant employed his OC spray "as a punitive measure in retaliation to [Plaintiff's] …demands for relief from the mace fumes…." (Doc. 24 at 2). Because the Defendant has not carried his burden of production and has failed to produce evidence showing the lack of any use of OC spray against Plaintiff, and offers no other testimony or evidence relating to his subjective intent, he is not entitled to summary judgment on this basis.

9

## 2. Objective Component

In contrast to his argument concerning the subjective component, Defendant's argument that Plaintiff cannot satisfy the objective component of his Eighth Amendment claim is not based *exclusively* on the denial that any incident occurred. The Defendant also argues that Plaintiff has not shown – and in fact has not even alleged – that he suffered any actual injury from the alleged use of OC spray.

To the extent that Defendant, relying on the minimal allegations in Plaintiff's complaint alone, is moving for dismissal for "failure to state a claim," the motion should be denied. While it is true that Plaintiff does not specifically allege in his complaint that he experienced any adverse effects from the discharge of OC spray through the vent, he does allege that he was already suffering 'burning eyes and difficulty breathing" from the initial discharge of OC spray by another officer in the general vicinity, shortly before the Defendant's discharge of additional OC spray "directly into my eye." Thus, this Court inferred at the screening level that Plaintiff's allegations stated a plausible claim.

Applying summary judgment standards brings Defendant closer to the mark, but the undersigned still concludes that Defendant's motion should be denied. Under Rule 56, Defendant argues that Plaintiff cannot satisfy the objective prong of his claim because there is no "supporting medical evidence" to demonstrate that Plaintiff suffered any actual injury. In other words, Defendant argues that any injury that Plaintiff alleges is too *de minimis* to support an Eighth Amendment claim. Defendant points to record evidence that Plaintiff was examined on 12/5/16, and confirmed that he had no injury at that time, and the lack of any "witnesses nor supporting medical evidence" relating to

the alleged incident. (See Mahlman denial of NOG appeal, Doc. 22-3 at 5 and Decision of Chief Inspector, Doc. 22-3 at 7). Despite potential hearsay issues, the undersigned assumes that referenced Exhibits could be sufficient to carry Defendant's burden of production to show the absence of anything but a *de minimis* injury. No medical evidence corroborates Plaintiff's allegation that he suffered burning eyes and trouble breathing as a result of the use of pepper spray on November 14, 2016. Of course, the lack of contemporaneous evidence is unsurprising since there is no dispute that Plaintiff did not receive any medical attention on that date. However, Plaintiff does not deny the accuracy of the account related in the institutional records, that Ms. Mahlman escorted him to the infirmary approximately three weeks after the incident for a medical examination, that a nurse found no injury or acute distress, and that Plaintiff stated: "I don't have any injuries right now." (Doc. 22-3 at 5).

Although Plaintiff has produced no evidence to refute the Defendant's Exhibits, he argues in his opposition to summary judgment that immediately after being pepper sprayed, he suffered "a debilitating sense of claustrophobic suffocation, nausea, and vomiting." (Doc. 24 at 2). In addition, Plaintiff newly asserts in his responsive memorandum that he "continues to suffer from mild claustrophobia and sudden attacks of shortness of breath that limits his ability to exercise." (Doc. 24 at 3). Plaintiff's newfound allegations, contained in his argument in opposition to Defendant's motion, are not evidence. Because the Defendant carried his burden of production to show a lack of injury, the burden shifted to Plaintiff to show through some form of testimony or evidence of record that he suffered more than a *de minimis* injury from the incident.

11

Unfortunately for Defendant, proof of only a *de minimis* injury suffered by Plaintiff (construing the facts in Plaintiff's favor and assuming the incident occurred) does not entitle the Defendant to judgment in this case. Although the objective component of an Eighth Amendment claim requires the pain that is inflicted to be "sufficiently serious," s*ee Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)(citations omitted), the Supreme Court has held that it is unnecessary for an inmate to prove that he suffered from any significant injury requiring medical attention in order to prove the objective component of an Eighth Amendment claim. *See Wilkins v. Gaddy*, 559 U.S. 34, 38, 130 S. Ct. 1175, 1178 (2010). *Wilkins* clarified that a *de minimis* injury in fact can be sufficient to support an Eighth Amendment claim, if the <u>force</u> that was used was not *de minimis* but instead was excessive. Since *Wilkins*, courts have been careful to focus on the amount of force applied in context, rather than the amount of injury that has resulted.

In Defendant's favor, the extent of injury is a factor to be considered in determining whether the assertion of force "'could plausibly have been thought necessary' in a particular situation." *Id.,* (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Thus, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9, (1992). The Eighth Amendment's "prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, <u>provided that the use of force is not of a sort repugnant to the conscience of mankind</u>." *Wilkins*, 130 S. Ct at 1178 (quoting *Hudson*, 503 U.S. at 9)(emphasis added). As the Supreme Court has explained, "the

12

core judicial inquiry is that set out in *Whitley*; whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins v. Gaddy,* 559 U.S. at 38, 130 S. Ct. at 1178-1179 ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts."). Thus, "'[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident.'" *Williams v. Curtin*, 631 F.3d at 383 (*quoting Hudson*, 503 U.S. at 9).

As the record stands, there remains a genuine issue of material fact concerning whether the Defendant used OC spray at all on November 14, 2016. If he did use it, he did not report it. Since the Defendant generally denies the incident occurred, he offers no evidence to refute Plaintiff's attribution of his allegedly retaliatory motive. To that extent, this case differs from the vast majority of cases involving the use of force in the prison context, where the primary issue isn't whether force was used, but whether the amount of force – whether OC spray or otherwise – was justified. Thus in most cases, the key issues to be considered are "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Id.* (quoting *Whitley,* 475 U.S. at 321).

By contrast, construing disputed facts in Plaintiff's favor as to the circumstances under which the pepper spray was allegedly deployed, the Defendant is not entitled to summary judgment because even if the injury that resulted was *de minimis*, the use of OC spray was for no reason other than in retaliation for Plaintiff's complaints, and

13

therefore was purely malicious and sadistic. *Contrast Thompson v. Joseph*, Case No. 1:12-cv-992, 2014 WL 1685918 (S.D. Ohio, April 29, 2014), R&R adopted at 2014 WL 2172894 (discussing OC spray cases, granting summary judgment on allegedly unlawful use of spray where Defendant put forth evidence that use of force itself was *de minimis* because it was in response to the inmate's verbal threat and/or attempt to spit).

The use of OC spray applied directly to an inmate's face arguably is more serious than any mere "push or shove." Surely, neither prison policies nor Defendant herein suggests that a corrections officer could arbitrarily deploy OC spray to an inmate's face maliciously and without any justification whatsoever, and still not violate the Eighth Amendment so long as no significant injury resulted. Even though Plaintiff has not come forward with evidence to suggest more than a fleeting or *de minimis* injury, this case is the perfect example in which injury and force are "imperfectly correlated," because the OC spray was allegedly used solely to satisfy the malicious and sadistic motivation of the Defendant. *Accord Williams v. Curtin*, 631 F.3d at 384 (holding under PLRA screening standards that "if true," the unprovoked use of O/C spray without reason "*may* permit a finding that the use and/or amount of force was unnecessary, which *may suggest* that [defendants'] actions were not taken in good faith and were *perhaps* motivated by the malicious purpose of causing harm.")(emphasis added). The Supreme Court reasoned in *Wilkins* that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 130 S.Ct. at 1178–79, 559 U.S. at 38. For the same reason, the Defendant is not entitled to

judgment here.

## C. Qualified Immunity and Plaintiff's Miscellaneous Claims

Defendant's final argument is that he is entitled to qualified immunity. The purpose of qualified immunity is to provide governmental officials with the ability "reasonably to anticipate when their conduct may give rise to liability for damages." *See Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (internal quotation omitted). Thus, a governmental official performing discretionary functions will be entitled to qualified immunity unless his actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A governmental official is entitled to immunity if the facts alleged do not make out a violation of a constitutional right, or if the alleged constitutional right was not clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 129 S.Ct. 808 (2009).

When a defendant moves for summary judgment based on qualified immunity, the official must first show that he acted within discretionary authority. *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). Once an official makes this showing, the burden shifts to the plaintiff to prove that the officer violated a right so clearly established that any reasonable official in that position would have understood it was unreasonable to engage in the conduct that violated the right. *Id*. Here, Plaintiff has made no claim that any Defendant was acting outside his authority.

Defendant argues that he is entitled to qualified immunity because he "did not use force against Plaintiff according to institutional records and investigations." (Doc.

15

22, citing Doc. 22-3 at 5, 7). As discussed, Defendant has failed to carry his burden to show that the incident against Plaintiff did not occur. The undersigned cannot credit the Defendant's suggestion in his memorandum (which is argument, not evidence) that no use of force occurred over the Plaintiff's contrary allegations in his complaint, Plaintiff's statements in the administrative grievance documents attached to Defendant's motion, and Plaintiff's argument in opposition to summary judgment.

At the same time, the undersigned recommends that judgment be granted in Defendant's favor on some claims, at least as articulated by Plaintiff in his opposition to summary judgment. When the undersigned first screened this case and directed service on the Defendant, it was based on the understanding that Plaintiff had stated a single claim that Defendant violated Plaintiff's Eighth Amendment rights through the excessive use of force (the use of "mace"). However, in his opposition to summary judgment, Plaintiff argues that the Defendant also should be held liable under the Eighth Amendment for deliberate indifference to Plaintiff's serious medical needs, by failing to provide Plaintiff with immediate medical attention.

The complaint does not state any such "deliberate indifference" claim. Plaintiff alleges only that Defendant Bigham discharged "mace" "directly into my eyes" without explanation and without charging Plaintiff with any misconduct. (Doc. 3 at 6). That allegation is sufficient to state the referenced excessive force claim, and no more. Plaintiff does not allege that he sought medical treatment from Bigham, or that the Defendant denied such a request. Nor is there any suggestion in the record that any treatment would have been required other than the opportunity to wash off any pepper

16

spray.  Plaintiff does not allege generally that he was denied access to soap and water, or that Bigham specifically prevented him from washing any affected area.  Although Plaintiff does allege that the excessive force incident occurred after an unidentified officer (who may or may not have been Bigham) denied his request to open the window or turn on a fan, that conduct also does not show deliberate indifference to serious medical needs on the part of the Defendant.  Even if Plaintiff intended to accuse Bigham of that conduct, the lingering effects of OC spray used by another officer to subdue another inmate in the vicinity of Plaintiff's cell does not suggest a sufficiently "serious" condition for which any lay person would have recognized the need for medical attention.

Plaintiff's lack of any injury confirms that Plaintiff would be unable to proceed on this claim even if he had properly alleged it in his complaint.  In addition, the Defendant would be entitled to qualified immunity based upon the lack of any clear controlling case law that would hold an official liable for failing to attend to an injury that was so *de minimis* that it required no care.

### III.  Conclusion and Recommendations

For the reasons discussed, **IT IS RECOMMENDED THAT** Defendant's motion for summary judgment (Doc. 22) should be **DENIED** as to Plaintiff's single claim that Defendant used excessive force against Plaintiff, but **GRANTED** as to any additional claims that Plaintiff attempts to present in opposition to summary judgment, including any construed claim that Defendant was deliberately indifferent to Plaintiff's serious medical needs.  It is further recommended that counsel be appointed, and that

17

additional pretrial and trial dates be scheduled.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THEODORE W. SMITH, III,

    Plaintiff,

v.

SOUTHERN OHIO CORRECTIONAL FACILITY
OFFICER BIGHAM,

    Defendant.

Case No. 1:17-cv-128

Barrett, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).